## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

EDWARD LAPE,

      Plaintiff,

v.                                Case No. 8:20-cv-2996-KKM-SPF

CHRISTOPHER NOCCO, JEFFREY
HARRINGTON, KEN GREGORY,
JENNIFER CHRISTENSEN, MICHAEL
FARRANTELLI, and STACY JENKINS,

      Defendants.

_____/

## <u>ORDER</u>

Plaintiff Edward Lape resigned from the Pasco County Sheriff's Office and now brings Racketeer Influenced and Corrupt Organizations Act (RICO) claims against his former supervisors. His efforts to transform his employment disputes into RICO claims are unsuccessful. Instead, Lape's amended complaint fails to state a claim upon which relief can be granted. As a result, the Court grants Defendants' motion to dismiss (Doc. 23), dismisses Lape's amended complaint with prejudice, and directs the clerk to enter judgment in Defendants' favor.

I.     **Procedural History**

Like the other related cases in this saga, the history of this litigation is both protracted and procedurally painful, yet with little advancement on the merits. On April 16, 2019, Christopher J. Squitieri and two other plaintiffs filed a complaint against fifteen defendants, all of whom were current or former employees of the Pasco County Sheriff's Office ("Squitieri litigation"), alleging a civil RICO and state law claim. *See Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS. A couple months later, an amended complaint was filed in the case; it named twenty plaintiffs—including Lape—and forty-five defendants. After receiving leave from the Court (at that time, the case was before the Honorable Charlene Honeywell), the Squitieri litigation plaintiffs filed a second amended complaint on August 7, 2019. Defendants moved to dismiss plaintiffs' second amended complaint less than a week later. During a hearing on defendants' motion to dismiss, Judge Honeywell step-by-step explained the deficiencies remaining in the plaintiffs' pleading and orally granted-in-part defendants' motion to dismiss the second amended complaint and directed plaintiffs to file a third amended complaint that complied with the Federal Rules of Civil Procedure. The Squitieri litigation plaintiffs filed a third amended complaint, which defendants again moved to dismiss.

After entering an order to show cause and considering plaintiffs' response, Judge Honeywell severed the Squitieri litigation claims and ordered plaintiffs to pursue their claims in separate actions against the appropriate defendants by December 16, 2020.

Lape initiated this action by filing a complaint against Defendants Christopher Nocco, Jeffrey Harrington, Ken Gregory, Jennifer Christensen, Michael Farrantelli, and Stacy Jenkins. (Doc. 1.) Lape then filed an amended complaint on February 19, 2021, alleging a civil RICO claim (Count I) and various constitutional violations (Count II). (Doc. 17.) The Court struck the amended complaint for failure to use an approved typeface, (Doc. 18), and Lape filed the operative complaint, strangely omitting the second count that was pleaded in his initial amended complaint, (Doc. 19). Defendants move to dismiss the amended complaint as a shotgun pleading and for failure to adequately plead a RICO claim. (Doc. 23.) Lape opposes the motion to dismiss (Doc. 25), and the Court stayed discovery pending the resolution of the motion to dismiss (Doc. 26).

## II.    Factual Background

Lape's amended complaint describes an effort from Defendants to harass Lape into resigning so that they could use his salary to hire three new deputies. (Doc. 19 at ¶ 27.) Lape alleges he was the highest paid Sergeant at the agency, earning a salary of $91,000.[1] The Defendants filed three "erroneous Internal Affairs Complaints against [Lape], and

---

[1] Lape does not specify whether "agency" refers to the Pasco County Sheriff's Office or the Pasco County Jail where he was a Sergeant. (*See* Doc. 19 at ¶¶ 25–26.)

wrote him up at least ten . . . other times." (*Id.* at ¶ 28.) The first two complaints were filed against Lape because he did not recommend a deputy for an award when the deputy made an arrest and purportedly cursed at a lieutenant. (*Id.* at ¶¶ 29.) Later, the lieutenant told Lape that he was instructed to file the complaint against him and the lieutenant's captain is the one who added the "slanderous[ ]paragraph." (*Id.* at ¶ 31.) Lape further alleges that he was put on administrative leave after Lape intervened in an incident between an inmate and one of Lape's deputies where he pulled the deputy off the inmate and restrained the inmate. (*Id.* at ¶¶ 32–34.) Although not described as such, the Court assumes this incident was the subject of the third Internal Affairs Complaint.

After Lape was placed on administrative leave, Defendant Jenkins told Lape that they would "continue to harass him and write him up until he was fired" if he came back to work. (*Id.* at ¶ 36.) All of the Defendants told Lape that if he did not resign, "he would be fired and would[ ]not be eligible to collect his vacation and sick pay or his retirement." (*Id.* at ¶ 37.) Lape resigned around 2018, "costing him approximately" $100,000 in retirement pay. (*Id.* at ¶ 38.)[2]

---

[2] In his amended complaint, Lape also describes the "Intelligence Led Policing" program that the Sheriff's Office had implemented. But Lape does not provide any specific allegations as to how he opposed the program or how the program related to any of his claims. For example, he alleges that "[a]ny resistance . . . [to] these operational demands would be subject to Defendants inflicting abuse, intimidation," and a variety of other repercussions. (Doc. 19 at ¶ 23.) But he does not state how he resisted the ILP. With only conclusory allegations regarding his opposition to the program, the Court will not presume the truth of these allegations or consider them further. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (noting that conclusory allegations are not entitled "to the presumption of truth").

4

## III.    Failure to State a Claim under Rule 12(b)(6)

Lape alleges the Defendants violated the federal RICO statute.[3] (Doc. 19 at ¶ 41.)

Defendants argue that Lape fails to successfully allege a civil RICO. (Doc. 23 at 7–18.)

Finding no pattern of racketeering which caused Lape injury to his business or property,

the Court agrees that Lape has failed to state a claim upon which relief can be granted.

### a.  Legal Standards

#### i.  Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts

to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). A

---

[3] Lape also alleges that Defendants violated Florida's RICO statute. But in pleading his state law claim, Lape only cites to section 895.02(8)(b), Florida Statutes—the Florida *criminal* RICO statute. Not only is this state law claim insufficiently pleaded, section 895.05(6) limits the relief available for a private person to injunctive relief. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998) (explaining that section 895.05(6) of the Florida criminal RICO statute "allows a private plaintiff to bring a civil suit for equitable relief only"). Because Lape is no longer an employee of the Pasco County Sheriff's Office and has alleged no threat of future injury, he lacks standing to seek injunctive relief under Florida law. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) (noting that plaintiffs who were former employees no longer employed by the defendant "lack[ed] standing to seek injunctive or declaratory relief against its employment practices"); *Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *4 (11th Cir. Mar. 11, 2002) ("[T]his Court has held that former employees who submit no fact that they will be discriminated against in the future lack standing to seek an injunction." (alteration in original) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997))). Although Lape argues in his response to Defendants' motion to dismiss that "[t]he injunctive relief requested under [Florida law] is the correction of the false Internal Affairs reports that continue to damage [Lape] by damaging his reputation and ability to find a job in law enforcement" and that he does not seek an injunction based on "employment practices" (Doc. 25 at 4-5), this argument fails. Lape does not mention injunctive relief anywhere in his amended complaint (*see* Doc. 19), much less allege facts sufficient to plead the elements entitling him to such relief. Further, neither his amended complaint (*see* Doc. 19) nor his response (*see* Doc. 25) contain allegations explaining how an injunction could provide the relief he seeks (correcting an internal affairs report) or explaining how this relief is connected to any racketeering activity, as required under Florida's criminal RICO statute.

claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## ii.  RICO Claim Standard

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008). To state a prima facie civil RICO claim under § 1964(c), a plaintiff must establish "three essential elements: first, that the defendant[s] committed a pattern of RICO predicate acts under

18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant[s'] racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations and punctuation omitted). Failing to adequately plead any one of these elements warrants dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).

To allege a pattern of predicate acts, a plaintiff must "show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Continued criminal activity, or "continuity," can be shown through either a "closed period of repeated conduct" (closed-ended continuity) or "past conduct that by its nature projects into the future with a threat of repetition" (open-ended continuity). *Id.* at 241. Closed-ended continuity can be alleged when the allegations show a "series of related predicates extending over a substantial period of time." *Id.* at 242. To allege predicates extending over a substantial period of time, a plaintiff must allege at least a period of nine months, although any "scheme[] lasting less than a year" may be too insubstantial. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1266 (11th Cir. 2004). Open-ended continuity can be shown through a "threat of continuity." *Id.* at 242.

### b.  Failure to Allege Pattern of Predicate Acts Causing Injury

Lape alleges at least seven different types of predicate acts. Only one of these acts potentially qualifies as a predicate act under the federal RICO statute. But even was it to qualify as a predicate act, Lape fails to allege either a closed-ended or open-ended pattern of continuing criminal activity by which he was "injured in his business or property," 18 U.S.C. § 1964(c) and therefore fails to allege a RICO claim.

### i.  Predicate Acts

An act of racketeering activity, commonly known as a "predicate act," is statutorily defined and includes a long list of state and federal crimes. *See* 18 U.S.C. § 1961(1). In order to be a predicate act, the act must be indictable under a variety of federal statutes or constitute an "act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical" which is chargeable under state law.[4] *Id.* Lape alleges that Defendants have "engaged in a pattern and practice, through the Pasco [County] Sheriff's Office, of engaging in 'racketeering activity'" through the following predicate acts: (1) mail fraud under 18 U.S.C. § 1341; (2) wire fraud under 18 U.S.C. § 1343; (3) tampering with a witness, victim, or informant under 18 U.S.C. § 1512(c); (4) theft or embezzlement from an employee benefit plan in violation of § 664 of the Florida Statutes; (5) perjury under

---

[4] Section 1961(1) also provides several other ways of alleging a predicate act which are irrelevant here.

§ 837 of the Florida Statutes; (6) tampering with, harassing, or retaliating against a witness, victim, or informant in violation of §§ 914.22 and 914.23 of the Florida Statutes; and (7) extortion under Florida state law. (Doc. 19 at ¶¶ 14, 41.) "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215.

In addition to the basic pleading standards, Lape must meet the heightened pleading requirements of Rule 9(b) when alleging predicate acts of fraud. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." (citation omitted)); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997) (explaining that "the Plaintiffs would be required to replead their RICO claims with the specificity required in Federal Rule of Civil Procedure 9(b)"). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co.*, 482 F.3d at 1316–17.

Although Lape fails to successfully allege a predicate act under any of the federal statutes and most of the Florida statutes, he sufficiently alleges a violation of the Florida extortion statute.

### 1. Lape fails to plead a violation of either 18 U.S.C. §§ 1341 or 1343.

Lape alleges that the Defendants violated 18 U.S.C. §§ 1341 and 1343 by creating the Internal Affairs Complaints "as a scheme, under false pretenses, to harass [Lape] to force him to resign or create grounds for a dismissal" and by transmitting "all documents" related to the "fraudulent proceedings" by mail or electronic means.[5] (Doc. 19 at ¶ 41.) To establish liability under the federal mail and wire fraud statutes, a plaintiff must prove: "(1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000) (citation omitted).

Lape fails to successfully allege that the Defendants "used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Id.* The sole allegation in the amended complaint related to the mails or interstate wires is Lape's conclusory allegation of the element itself when he alleges that the documents "were transmitted either by mail

---

[5] The amended complaint actually states that the Defendants' scheme was to harass "the Defendant to force him to resign or create grounds for a dismissal." (Doc. 19 at ¶ 41.) Lape clearly intended to allege that the Defendants were harassing *him*, not one of the Defendants, so the Court will evaluate this allegation under that assumption.

or[ ]electronic means." (Doc. 19 at ¶ 41.) Lape fails to allege any specifics as to what wires or mail were used. Were the Internal Affairs Complaints mailed from one office to another? Were they transmitted over a wire, uploaded to the internet, or sent by fax? The allegation that the document was "transmitted either by mail or electronic means" is a mere conclusory legal claim that is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681. Lape fails to plead the predicate acts of mail or wire fraud.

## 2. Lape fails to plead a predicate act under 18 U.S.C. § 1512(c).

Lape alleges that the Defendants violated 18 U.S.C. § 1512(c) by "corruptly, knowingly, and falsely alter[ing] an Internal Affairs Report that was used in an official proceeding against [Lape]." Section 1512(c) prohibits corruptly preventing an object from being available for "use in an official proceeding" or "otherwise obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so." Critically and by its own language, this section applies only where an official proceeding is affected by the unavailability of an object or otherwise obstructed.

The statute defines "official proceeding" as either (A) "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury"; (B) "a proceeding before the Congress"; (C) "a proceeding before a Federal Government agency which is authorized by

law"; or (D) "a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce." 18 U.S.C. § 1515(a)(1).

Although Lape alleges that the Defendants altered an "Internal Affairs Report" that was used in an official proceeding, he does not allege any facts that would make it plausible that the proceeding fits into any of the proceedings listed in § 1515(a)(1). Any internal affairs investigation in the Sheriff's Office or any related report or statement cannot satisfy the statutory definition under § 1515(a)(1). Lape thus fails to plead a predicate act under § 1512(c) on which a RICO claim could be based.

### 3. Lape fails to plead a predicate act under 18 U.S.C. § 664.

In his amended complaint, Lape alleges that Defendants "conspired to violate 18 U.S.C. § 664. – Theft or embezzlement from [an] employee benefit plan." (Doc. 19 at ¶ 41.) Section 664 provides that: "[a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both." The statute

further clarifies that only embezzlement from benefit plans subject to title I of the Employee Retirement Income Security Act of 1974 (ERISA) count for § 664.

The Defendants correctly point out that Lape has not alleged that his sick leave, retirement, and vacation pay are part of benefit plans subject to ERISA. (Doc. 23 at 16–17.) Lape alleges that his forced resignation caused him to "miss the drop program," (Doc. 15 at ¶ 38), a program the Defendants explain is the "deferred retirement option program of the Florida Retirement System," (Doc. 23 at 16). The Defendants instead claim that the Sheriff's Office participates in the Florida Retirement System, which is not subject to ERISA. (*Id.*) According to the Defendants, the Florida Retirement System is a government plan and "government plan[s]," which are "plan[s] established . . . by the government of any State or political subdivision thereof," 29 U.S.C. § 1002(32), are expressly excepted from ERISA, § 1003(b)(1).

Because Lape fails to allege facts that make it plausible that  his sick pay, vacation time, and retirement benefits were part of a benefit plan subject to ERISA, Lape fails to allege a predicate act for RICO through § 664.

### 4. Lape fails to plead a predicate act under section 837 of the Florida Statutes.

Lape alleges the Defendants violated section 837 of the Florida Statutes, the Florida perjury statute, by engaging in "[t]he conduct described in the General Allegations above." (Doc. 15 at ¶ 41.) There are six sections within chapter 837 of the Florida Statutes which

proscribe different forms of perjury, but Lape does not specify which section he alleges that the Defendants violated. Nor does Lape specify what conduct constituted the perjury. Lape's incorporation of the "general allegations" gives little notice to the Court or to the Defendants of what specific conduct is alleged to have violated chapter 837 and, lacking "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal* 556 U.S. at 678, fails to state a plausible claim. Each of the sections within chapter 837 that proscribe conduct requires several elements. Common to each of them is a requirement of some false statement. While the Court might be able to speculate as to what conduct allegedly constituted the false statement, it is unable to imagine the possible—but unalleged—conduct that violated the other elements of these different prohibitions.

The Court takes each section of chapter 837 in turn. Sections 837.012, 837.02, and 837.05 require that the false statements be made under oath. Lape has not alleged that the Defendants made any statements under oath. Sections 837.05 and 837.055 require that false information be given to a law enforcement officer and relate to an alleged commission of a crime, a felony investigation, or a missing person investigation. Lape has not alleged that the Defendants gave any false information related to the commission of a crime or missing person investigation. Is it a crime to not recommend a deputy for an award, (Doc. 19 at ¶ 29), to curse at a coworker, (*id.* at ¶ 30), or to intervene in an assault between a

14

deputy and a prisoner, (*id.* at ¶ 33)?[6] The Court doubts these are indictable as crimes and Lape does not allege these acts constitute crimes. These five sections are unavailable to Lape.

The one remaining provision, section 837.06, proscribes "mak[ing] a false statement in writing with the intent to mislead a public servant in the performance of his or her official duty." Assuming that the Internal Affairs Complaints were the false statements, the Court is unable to determine from any allegation in the amended complaint who the public servant was that the Defendants "intended to mislead." Were the complaints intended to mislead a supervisor who had the power to terminate Lape? Lape does not say—instead he alleges that all of the Defendants "apprised [him] that if he did not resign, he would be fired." (Doc. 19 at ¶ 37.) The Defendants' communication of this possibility of termination to Lape suggests that the Defendants themselves had the power of termination. And if they had the power of termination, who would they be intending to mislead? In any event, Lape does not specify and the Court cannot provide the factual allegations on his behalf. Lape fails to allege perjury as a predicate act.

---

[6] The incident in which Lape was alleged to have intervened occurred after one of Lape's deputies attacked an inmate in response to the inmate attacking the deputy. (Doc. 19 at ¶¶ 32–33.) Although such a retaliation may constitute a crime—the Court expresses no opinion—Lape does not allege that the allegation of this retaliation was false. Instead, Lape describes two Internal Affairs Complaints, then describes this incident, and then alleges that there were three Internal Affairs Complaints filed. (Doc. 19 at ¶¶ 28–35.) The Court is unable to discern whether Lape alleges that this retaliation was included in the Internal Affairs Complaint or whether Lape even alleges the retaliation was a false allegation. Nor would the Court see the relevance of the allegation to Lape's allegation of the Defendants' perjury.

**5. Lape fails to plead a predicate act under sections 914.22 and 914.23 of the Florida Statutes.**

Lape alleges that the Defendants "engaged in threats or extortion in violation of . . . Fla. Stat. §[§] 914.22 and 914.23, relating to tampering with or harassing a witness, victim, or informant, and retaliation against a witness, victim, or informant."[7] (Doc. 19 at ¶ 41.) Section 914.22 of the Florida Statutes proscribes tampering with a witness or victim and section 914.23 proscribes retaliating against a witness or victim. Because Lape fails to allege any official investigation or proceeding that he attended or testified in or would testify in, he fails to sufficiently plead either section 914.22 or 914.23.

Section 914.22 of the Florida Statutes proscribes intimidation, threats, or bribery to induce someone to withhold testimony from an official investigation or proceeding and harassment that prevents or dissuades someone from attending or testifying in an official investigation or proceeding. Lape elsewhere alleges that the Defendants forced him to resign or face losing his vacation and sick leave pay. (Doc. 19 at ¶ 37.) Assuming this sufficiently alleges a threat or a bribe, Lape fails to explain how this threat or bribe was done by the Defendants with the intent to induce Lape to withhold testimony from an

---

[7] The Court assumes that Lape is not intending to allege violations of these statutes in any way other than as predicate acts for his RICO claim. Under section 914.24 of the Florida Statutes, civil actions can only be brought for violations of sections 914.22 and 914.23 "upon application of the state attorney." *See also Anthony Distributors, Inc. v. Miller Brewing Co.*, 882 F. Supp. 1024, 1034 (M.D. Fla. 1995) (denying compensatory, exemplary, and punitive relief where plaintiff alleged violations of 914.22 and 914.23 because "[n]either statute provides for an award of compensatory damages" and "the state attorney is the party authorized to request [equitable] relief on behalf of the witnesses"). As Lape is not the state attorney, he cannot bring an action for violations of 914.22 and 914.23 of the Florida Statutes absent some civil enforcement mechanism, like RICO.

official investigation or proceeding. *See* § 914.22(1)(a), Florida Statutes. Moreover, it is not clear what official investigation or proceeding Lape would withhold testimony from—Lape's complaint does not allege any investigation or proceeding that was impending at the time of his resignation and in which he would testify.

Lape also alleges that the Defendants violated section 914.23 by retaliating against a witness, victim, or informant. This section proscribes "caus[ing] bodily injury to another person or damag[ing] the tangible property of another person, or threaten[ing] to do so" as retaliation for a person's attendance or testimony in an official proceeding. Section 914.21(4), in turn, defines "official proceeding" as a proceeding before a judge, court, grand jury, the legislature, a federal agency authorized by law, or the Commission on Ethics. Lape does not allege that he attended or gave testimony in any proceeding before a judge, court, grand jury, legislature, federal agency, or the Commission on Ethics.

### 6. Lape successfully pleads a predicate act under section 836.05 of the Florida Statutes.

Lape alleges that the Defendants "engaged in threats or extortion in violation of Fla. Stat. § 836.05." (Doc. 19 at ¶ 41.) Section 836.05 of the Florida Statutes criminalizes extortion, stating that whoever "maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with

17

intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a" second-degree felony. Florida's "extortion statute prohibits only those utterances or communications which constitute malicious threats to do injury to another's person, reputation, or property." *Carricarte v. State*, 384 So. 2d 1261, 1263 (Fla. 1980). And "the threats must be made with the intent to extort money or the intent to compel another to act or refrain from acting against his will." *Id.*

Although Lape gives no specific factual allegations for his claim that the Defendants violated section 836.05, his incorporation of the "General Allegations" suggests that the alleged extortion occurred when Defendant Jenkins told Lape that "they" were going to keep harassing him and "writ[ing] him up until he was fired" and when all the Defendants told Lape that he would be terminated if he did not resign. (Doc. 19 at ¶¶ 36–37.) If true, these threats would constitute "utterances and communications" which threaten to terminate Lape's employment or harm his reputation through false complaints. And malicious intent to compel Lape to act against his will, namely his will to continue his employment, could be inferred from these threats. *See Manuel v. State*, 16 So. 3d 833, 835 (1st DCA 2005) (noting that "intent is usually proven through inference"). Lape sufficiently alleges extortion as a predicate act under Florida law.

ii. **Lape fails to allege a pattern of racketeering activity that injured his business or property.**

Essential to any RICO claim is the basic requirement of establishing a pattern of racketeering activity that causes injury to the plaintiff. *See Jackson*, 372 F.3d at 1264; *Sanderson Farms*, 744 F.3d at 712. "To successfully allege a pattern of racketeering activity, [a] plaintiff[] must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Id.* at 1264. To prove "a 'pattern of racketeering activity' it is not sufficient to simply establish two isolated predicate acts." *Id.* Continuity can be alleged by allegations of predicate acts that take place over a substantial period of time (closed-ended) or by alleging a threat of continuity (open-ended). *See H.J. Inc.*, 492 U.S. at 241–42. Lape's RICO claim fails because he does not allege a substantial period of criminal activity or a threat that caused his injury.

As described above, the only predicate act that Lape sufficiently alleges is the Defendants' extortion of Lape. The extortion took place when Defendant Jenkins told Lape that "they" would "continue to harass him and write him up until he was fired" and when all the Defendants told Lape that he would be terminated if he did not resign. (Doc. 19 at ¶¶ 36–37.) Neither of these allegations specify when the threats took place except for the fact that "[Lape] was forced to resign in approximately 2018." (Doc. 19 at ¶ 38.) Lacking any identification of when the threats occurred, Lape fails to allege a pattern of

criminal activity taking place over a substantial period of time. And when RICO allegations concern only "a single scheme with a discrete goal"—here, Lape is the only alleged victim and the sole purpose of the extortion predicate acts was to force him to resign— no closed-ended continuity exists even if "the scheme took place over longer periods of time." *Jackson*, 372 F.3d at 1267.

Further, Lape fails to allege an open-ended pattern continuing criminal activity by which he was injured in his business or property. An open-ended threat of continuing activity requires more than a past threat that subsequent events nullified. Instead, a plaintiff must "allege either that the alleged acts were part of the defendants' 'regular way of doing business,' or that the illegal acts threatened repetition in the future.'" *Jackson*, 372 F.3d at 1267 (citation omitted). Here, Lape's complaint contains two allegations that might constitute the open-ended threat—neither sufficiently alleges an open-ended threat to create a pattern of criminal activity that proximately caused Lape's injury.[8] *See Sanderson Farms, Inc.*, 744 F.3d at 705 (noting that a defendant's racketeering activity must "proximately cause[] the injury").

First, Lape alleges that the Defendants' conduct is part of the Defendants' "customs and practice" of targeting those "who would not exhibit undying loyalty to all operational

---

[8] A generous reading of the response to the motion to dismiss would be that Lape alleges that the *implementation* of the ILP program itself constituted the predicate acts making up the pattern. (Doc. 23 at 12–16.) But Lape does not make that allegation in his amended complaint and fails to explain, in both the operative pleading and response in opposition to the motion to dismiss, how the ILP program constitutes racketeering activity under 18 U.S.C. § 1962.

demands the Defendants placed on [them]." (Doc. 19 at ¶ 17.) This cannot count as a "regular way of doing business" because Lape does not allege any resistance to the Defendants "operational demands." Specifically, although he describes the ILP program in some detail, (Doc. 19 at ¶¶ 18–22), he never alleges that he resisted it in any way or how it is related to the alleged predicate acts of extortion under Florida law. And if Lape did not resist the "operational demands," he cannot be the subject of the Defendants' alleged "customs and practice" of targeting those who resist. Thus, even if the Defendants had a custom and practice of retaliating against those who resist their "operational demands," Lape has not alleged that he was injured by it or how it is related to the predicate acts of extortion against him. And this allegation fails to establish open-ended continuity or injury, as "a civil RICO plaintiff must always establish a proximate-causal, 'direct relation' between the injury and injurious conduct at issue." *Sanderson Farms, Inc.*, 744 F.3d at 712.

Second, Lape alleged that Defendant Jenkins threatened Lape with continual harassment if he returned to work and that all the Defendants told Lape that if he did not resign, he would be fired. (Doc. 19 at ¶¶ 36–37.) Lape does not here allege that the Defendants' "regular way of doing business" is threatening coworkers to resign or face harassment and termination. *Jackson*, 372 F.3d at 1267 (citation omitted). Instead, he is alleging something closer to a "specific threat of repetition extending indefinitely into the future." *H.J. Inc*, 492 U.S. at 242. The specific threat of repetition is the Defendants'

21

threats to harass or have him fired if he does not resign. But Lape has resigned, blunting any future or ongoing threat to harass or fire Lape. The Court cannot perceive any active threat of ongoing criminal activity in these allegations.

### c. RICO Claim Conclusion

Because Lape fails to adequately allege the existence of any continuing pattern of predicate acts by which his business or property have been injured, his civil RICO claim fails.[9]

## IV. Conclusion

In total between the Squitieri litigation and here, Lape has filed five complaints. And after quintuple chances, his amended complaint remains deficient and warrants dismissal for failure to state a claim upon which relief may be granted. Lape received more than fair notice of the defects in his complaint yet rebuffed all warnings to remedy them. Accordingly, the Court dismisses this case with prejudice. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018); *Jackson v. Bank of Am., N.A.*, 898 F.3d

---

[9] Lape's amended complaint almost certainly also fails as an impermissible shotgun pleading. *SeeWeiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). It contains "conclusory, vague, and immaterial facts obviously not connected to any particular cause of action," *id.*, and fails to separate into individual counts his federal and state RICO claims. But because the claims appear with enough clarity for this Court to analyze and reject them for substantive pleading deficiencies and because Lape's counsel repeatedly rejected earlier judicial warnings about shotgun pleading problems, the Court will not expend additional resources explaining in detail why they once again fail to satisfy Federal Rules of Civil Procedure 8 and 10.

1348, 1358 (11th Cir. 2018); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014).

Accordingly, it is **ORDERED**:

(1)  Defendants' motion to dismiss Lape's amended complaint is **GRANTED**. (Doc. 23.)

(2) The Court **DISMISSES WITH PREJUDICE** Lape's amended complaint (Doc. 19) and **DISMISSES THIS ACTION**.

(3) The Clerk is directed to enter judgment in favor of Defendants, terminate any pending motions and deadlines, and to close the case.

**ORDERED** in Tampa, Florida, on September 13, 2021.

Kathryn Kimball Mizelle
United States District Judge